712 So.2d 500 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Earl WARREN, Defendant-Appellant.
Nos. 28889-KA, 28890-KA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
*504 Teat & Avery by Darrell R. Avery, Jonesboro, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Walter E. May, District Attorney, David M. Newell, Assistant District Attorney, for Plaintiff-Appellee.
Before MARVIN, NORRIS and GASKINS, JJ.
NORRIS, Judge.
Earl Warren was charged by two separate bills of information for a total of four crimes. The first charged him with possession of a firearm by a convicted felon, a violation of R.S. 14:95.1, and possession of cocaine, a violation of R.S. 40:967C. The second bill charged him with two counts of illegal possession of stolen things, a violation of R.S. 14:69. Warren was tried by a 12-member jury and found not guilty on one count of Illegal Possession of Stolen Things but guilty as charged on all other counts. Warren now appeals his convictions and sentences, alleging 27 assignments of error.[1] For the reasons expressed, we affirm in part and reverse in part.

Procedural and Factual History
On July 24, 1994, two Homer police officers on routine patrol stopped a motorcycle that had just run a stop sign. The driver of the motorcycle walked up to the officers and they recognized him as the defendant, Earl Warren. Sergeant Donald Malray asked Warren for his driver's license and the defendant started walking back toward the motorcycle. Officer Malray observed a black fabric bag attached to the gas tank of the motorcycle. Malray testified that Warren went toward the bag and that he became concerned for his safety when he observed a gun-shaped "bulge" in the bag. He told Warren to step back from the motorcycle, opened the bag, and found a .380 caliber handgun. Because the officers recognized defendant as a convicted felon, he was read his Miranda rights and placed under arrest for possession of a firearm by a convicted felon. As officers were searching him pursuant to arrest, they found several pieces of an off-white rock-like substance in his left front shirt pocket. The substance was later determined to be crack cocaine. The motorcycle was taken into custody, and later determined to be stolen.
At trial, defense counsel presented evidence that the motorcycle had been purchased by defendant's son, Kirk Warren, and that the handgun belonged to his other son, Chrone Adams. Chrone testified that he left the gun inside the bag on the motorcycle after he finished riding it the day of his father's arrest; the gun and the bag belonged to him. Kirk Warren testified that he owned the bag and the motorcycle, having purchased the bike as salvage in Florida some three weeks prior to July 24, 1994; he denied knowing that it was stolen. Neither son denied that the outline of the gun could be seen from the outside of the black bag or that their father may have known what was in the bag. They did testify that they never told their father about the gun on the motorcycle. Kirk Warren stated that prior to his father's arrest, he was taking his other brother, Earl Warren, Jr. to the bus station. However, before the two left, Earl Warren, Jr. gave the shirt he was wearing to his father, the defendant. The defendant then got on the motorcycle and left to get cigarettes. Kirk Warren also testified that Earl, Jr. was a drug user and could have had cocaine in the shirt he gave his father.
The jury found Warren not guilty of illegal possession of stolen things (pistol) but guilty as charged on all other counts. Warren now appeals the judgment and sentence asserting 27 assignments of error.

DISCUSSION: Sufficiency of the Evidence
By assignments of error Nos. 24 and 25, Warren contests the sufficiency of the evidence of his three convictions. If a court *505 reviewing a criminal conviction finds the evidence insufficient to support a guilty verdict, the constitutional protection against double jeopardy bars retrial of the defendant. Hudson v. Louisiana, 450 U.S. 40, 43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30 (1981); See U.S. Const. amend. V, XIV. All other issues in the case become moot. State v. George, 95-0110 (La.10/16/95), 661 So.2d 975; State v. Hearold, 603 So.2d 731, 734 (La.1992). Thus, when the defendant challenges both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Huff, 27,212 (La.App.2d Cir. 8/23/95), 660 So.2d 529. The appellate review standard is whether, after viewing the evidence, both admissible and inadmissible, in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Famous, 27,593 (La.App.2d Cir. 1/24/96), 667 So.2d 1209.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const., art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Meyers, 620 So.2d 1160 (La.1993). When circumstantial evidence is used, La.R.S. 15:438 mandates that in order to convict, "assuming every fact to be proved that the evidence tends to prove, it must exclude every reasonable hypothesis of innocence." Facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).

Possession of a firearm by a convicted felon
To convict defendant of possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La.R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983); State v. Tatum, 27,301 (La.App.2d Cir. 9/27/95) 661 So.2d 657.
The evidence shows that Warren was convicted of possession of cocaine on October 12, 1987 in docket # 15,857, Caddo Parish; he even conceded this in closing argument. A violation of the Uniform Controlled Dangerous Substances Act, such as possession of cocaine, is an enumerated felony under La. R.S. 14:95.1 and clearly, the statutory limitation period of 10 years has not elapsed.
The State presented testimony from the arresting officers that after defendant was stopped for a traffic violation, a Bersa .380 caliber handgun was found in a black bag attached to the motorcycle he was riding. Officer Malray testified, that after the stop Warren appeared more nervous than normal and alit from the motorcycle in a manner as if to prevent the officers from getting close to it. When asked for his driver's license, Warren then moved toward the motorcycle and reached for the black bag, whereupon Malray observed a bulge in the bag in the shape of a gun and told defendant to stop. Malray then opened the bag and found the gun inside. The defendant later produced his driver's license from his back pocket, not the black bag.
Defendant argues that there was insufficient evidence that he was in possession of the firearm. He cites Officer Morgan's testimony that Warren denied that he owned or knew about the firearm in the bag. He also cites his sons' testimony. Chrone Warren, the defendant's 15-year-old son, testified that he owned the black bag and the gun. Chrone stated he purchased the gun on the street and did not tell his father either that he had bought it or placed it in the black bag.
*506 On the day of the defendant's arrest, Chrone stated he left the pouch and gun on the motorcycle, but if he had known his father would ride the motorcycle he would have removed the bag and gun.
Kirk Douglas Warren, another son of defendant, also testified at trial. He stated that he owned the motorcycle and the black bag and that the gun was in the black bag. Kirk stated it was the defendant's first time riding the motorcycle and he had not told the defendant about the gun in the bag. On cross examination, Kirk stated if Chrone claimed he owned the black bag, he had lied.
This evidence does not negate the State's proof that Warren was in at least constructive possession of a firearm. Constructive possession, as opposed to actual possession, is sufficient to satisfy the possession element of La.R.S. 14:95.1. State v. Day, 410 So.2d 741 (La.1982). Constructive possession is a legal term describing the situation in which a person who is not in actual possession of an object can nevertheless be considered in legal possession of the thing if it is subject to his dominion and control. State v. Cann, 319 So.2d 396 (La. 1975); State v. Tatum, supra.
Although there is conflicting testimony as to the actual owner of the motorcycle, the evidence showed beyond a reasonable doubt that Warren had sole dominion and control over it and its contents at the time of his arrest. Further, an arresting officer testified that the weapon found inside the attached bag cast an outline that was visible without opening the bag. The jury observed the bag, the gun's placement inside, as well as the close proximity of the bag to the motorcycle rider. Additionally, Warren acted more nervous than normal and despite reaching for the bag, he ultimately produced his driver's license from his back pocket. These facts taken as a whole undermine Warren's claim that he could not be reasonably certain that a gun was inside the bag.
Further, La.R.S. 14:95.1 requires only general criminal intent, which means that the circumstances indicate that the accused "in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10(2); State v. Godeaux, 378 So.2d 941 (La.1979), rehearing denied 1980. Although the existence of intent is a question of fact, it need not be proven as such, but may be inferred from the circumstances of a transaction. La.R.S. 15:445. We conclude the requisite intent can be inferred from the facts of the present case.
Faced with this conflicting testimony the jury obviously chose to believe the testimony of the police officer. It is not the function of the appellate court to evaluate the credibility of the witnesses and to overturn the trial court on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La. 1983). Such factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Lee, 526 So.2d 450 (La.App. 5 Cir. 1988). This assignment lacks merit.

Possession of cocaine
Defendant also challenges the sufficiency of the evidence as to possession of cocaine. In order to convict defendant of this offense, the State must prove that the accused was in possession of the illegal drug and that he knowingly or intentionally possessed the drug. La.R.S. 40:967C; State v. Lias, 28,091 (La.App.2d Cir. 5/8/96), 674 So.2d 1044; State v. Ferrell, 25,851 (La. App.2d Cir. 3/30/94), 634 So.2d 977.
Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances. State v. Riley, 587 So.2d 130 (La.App. 2d Cir.1991); State v. Goiner, 410 So.2d 1085 (La.1982).
Officer David Morgan testified that after he arrested and handcuffed Warren, he conducted a search of the defendant's person. Morgan testified that Warren began acting nervous and jittery, reaching for his left shirt pocket, "fumbling" and saying he wanted a cigarette. Morgan's attention was drawn to the pocket because the defendant continued to reach for it even after the cigarettes had been taken out. The officer felt something inside the pocket, reached in and pulled out several white pieces of a rock-like substance.
*507 Officer Morgan stated that the defendant told him the substance in the pocket was not his, as he had borrowed the shirt. Morgan further testified that en route to the police station and after receiving his Miranda rights, Warren stated he needed to talk to Charles Johnson, head of the narcotics division of the Homer Police Department. Sergeant Malray testified the defendant stated he "wanted to work with Officer Charles Johnson of the Homer Police Department and that he would go back to where he purchased the rock cocaine and make some buys for our department." The defendant indicated that he would set somebody up for the police department if they would let him go.
The rock-like substance and the defendant's shirt were both taken to the Northwest Louisiana Crime Lab for analysis and were positively identified by the officer at trial as the same taken from the defendant. Certificates of analysis from the crime lab were admitted into evidence by the State, as exhibits S-6 and S-8.
Testifying for the defense, Warren's son Kirk stated that shortly before this incident, Warren got a shirt from another son, Earl, Jr. At the time of the "shirt exchange," Earl, Jr. was leaving to take a bus to New Orleans. Kirk further testified that Earl, Jr. was a "user" who may have left the cocaine in the pocket at the time he gave the shirt to the defendant. Kirk also testified that the shirt given to his father looked like the same shirt introduced as State Exhibit 11.
The elements of knowledge and intent are states of mind and need not be proven as facts, but rather may be inferred from the circumstances. State v. Reaux, 539 So.2d 105 (La.App. 4 Cir.1989). The jury may draw reasonable inferences to support these contentions based upon the evidence presented at trial. Id.
Based on the evidence presented, a reasonable trier of fact could conclude that the defendant knowingly possessed cocaine at the time of his arrest. Despite his contention to the contrary, from the circumstances, a jury could infer that the defendant was aware of the cocaine in his pocket. After being arrested on another charge, the defendant began reaching for his pocket and "fumbling" with the pocket under the guise of wanting a cigarette. Once the cigarettes were removed from the pocket, the defendant continued to reach for the pocket, alerting the attention of the officer. The officer found pieces of a rock-like substance which after analysis tested positive for cocaine. Further direct evidence of the defendant's guilt comes from the officer's testimony that Warren admitted the cocaine was his and attempted to "make a deal" and make other "buys" from his supplier for the police department.
In light of this admission, the jury could have accepted Kirk Warren's testimony and still found that the cocaine belonged to the defendant; Warren could have put on his son's shirt and then bought the crack found in the pocket. Considering all the testimony presented at trial, and viewing the evidence in the light most favorable to the prosecution, we find the jury did not abuse its discretion in rejecting the defense theory. This assignment lacks merit.

Illegal possession of stolen things
Defendant also contests the sufficiency of evidence to convict him of Illegal Possession of Stolen Things. The elements of this offense are: (1) the intentional possessing, procuring, receiving, or concealing; (2) of anything of value; (3) which has been the subject of any robbery or theft; and (4) under circumstances which indicates that the offender knew or had good reason to believe that the thing was the subject of one of these offenses. La.R.S. 14:69; State v. Silvio, 623 So.2d 1345 (La.App. 2d Cir.1993). Mere possession of things later shown to be stolen does not create a presumption of knowledge of the "stolen status" of the property; the State must prove beyond a reasonable doubt that the accused actually knew or had good reason to believe that the property had been stolen. State v. Ennis, 414 So.2d 661 (La.1982).
Based on this record, a reasonable trier of fact could have concluded that the defendant was in possession of the stolen motorcycle which had some value; however, there is very little evidence in the record to show *508 what this defendant knew about the circumstances surrounding the ownership of the motorcycle. Even viewed in the light most favorable to the State, the evidence does not show beyond a reasonable doubt that the defendant knew or should have known that the motorcycle was stolen.
Kirk Warren testified that he purchased the motorcycle from a cousin in Florida. He claimed he received a salvage title for the motorcycle and kept it in the black bag attached to the motorcycle. Officer Malray testified he searched the black bag after the defendant's arrest and admitted discarding some of the items from the bag which he described as trash and papers with numbers. Based on this testimony it was possible that the salvage title Kirk Warren alleged to have evidencing the purchase of the motorcycle could have been in the bag.
Kirk Warren's credibility as a witness may have been questioned by the jury; however, even if his testimony was completely disregarded, the State presented no evidence at trial to show the defendant knew or should have known the motorcycle was stolen. In brief, the State argues that the defendant was a convicted felon in possession of a firearm and cocaine at the time of his arrest; therefore, the defendant knew or should have known that the motorcycle he was riding was also stolen. The State further contends that because defendant's son (by his own admission) was an unemployed convicted felon, defendant should have known the practically new motorcycle was obtained illegally by his son; however, the record is silent as to how much Warren knew about his son's situation. The State relies primarily on circumstantial evidence to prove illegal possession of the motorcycle. This evidence does not exclude the reasonable hypothesis that the defendant honestly believed his son's representation that the bike was legally purchased as salvage in Florida.
The State has the burden of proving each element of the offense beyond a reasonable doubt and the fourth element (good reason to believe the motorcycle was stolen), is separate and distinct from the first element (possession or receipt). Mere proof that Warren briefly possessed the motorcycle, that it was in fact stolen by someone, and that he had a criminal record does not constitute evidence that he knew or had good reason to believe the motorcycle was stolen. State v. Silvio, supra.
We conclude that, as a matter of law, the State failed to adduce enough evidence to show beyond a reasonable doubt that Warren knew or had good reason to believe that the motorcycle was stolen. The defendant's conviction of Illegal Possession of Stolen Things (motorcycle) is therefore reversed.[2]

Challenges for Cause
By five assignments of error, Warren contests the District Court's refusal to grant his challenges for cause of prospective jurors Jeffrey Williams, Andy Prince, Alonzo Mitchell, Phyllis Frye, and Bettie Banks. Defendant alleges four of the five challenged prospective jurors should have been removed for cause as they stated they read or had some knowledge of a newspaper article referencing an arrest of the defendant after the instant charges. Defendant states that the newspaper article gave the veniremen knowledge of a separate crime committed after the alleged offense that they would not receive at the trial.
The State constitution guarantees to the defendant the "right to full voir dire examination of prospective jurors[.]" La. Const. art. 1, § 17. Challenges for cause are regulated by La.C.Cr.P. art. 797:
Art. 797. Challenge for cause
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he *509 declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence.
* * * * * *
(4) The juror will not accept the law as given to him by the court[.]
The trial judge is vested with broad discretion in ruling on challenges for cause; her ruling will be reversed only when a review of the entire voir dire reveals an abuse of discretion. State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683, and citations therein; State v. George, 26,867 (La.App.2d Cir. 4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855. A challenge for cause is not warranted where a prospective juror has volunteered an opinion seemingly prejudicial to the defense, but subsequently on further inquiry has demonstrated the ability and willingness to decide the case impartially according to the law and evidence. State v. Eastin, 419 So.2d 933 (La.1982); State v. Wiley, 614 So.2d 862 (La. App. 2d Cir.1993).
When a defendant uses all his peremptory challenges, a trial court's erroneous ruling depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. State v. Cross, supra. The minutes show that Warren exhausted all of the peremptory challenges allotted by law. R.p. 11.
Prospective juror Jeffrey Williams. Warren does not indicate why this prospective juror should have been removed for cause. A review of the record indicates that the defendant raised a general challenge for cause against Mr. Williams; however, the record does not indicate any specific reason for that challenge. This assignment with respect to Mr. Williams was not briefed and is therefore considered abandoned pursuant to URCA Rule 2-12.4. State v. Dugar, 93-718 (La.App. 3 Cir. 10/5/94), 643 So.2d 870. This assignment lacks merit.
Prospective jurors Andy Prince, Alonzo Mitchell, Phyliss Frye, and Bettie Banks. Warren challenged these four prospective jurors on grounds that they had substantial and highly prejudicial information about an arrest subsequent to the ones for which he was on trial. During voir dire, questioning revealed that the contested veniremen each read about a subsequent arrest of the defendant in the local newspaper. Prospective jurors who indicated they had read or heard about a newspaper article were individually questioned out of the presence of other prospective jurors. The individuals questioned remembered various aspects of the article which discussed drugs, weapons, and stolen goods.
The entirety of the voir dire testimony given by Andy Prince, Alonzo Mitchell, Phyliss Frye, and Bettie Banks reveals that the exposure to the newspaper publicity did not lead any of them to form an opinion as to Warren's guilt or innocence of the instant offenses. Each assured the trial court they could set aside what they had read or heard and could decide the case based only on the evidence. Their answers do not indicate that any of them could not be fair and impartial. Thus we find no abuse of discretion by the trial court's denial of defendant's challenges for cause.

Motion for mistrial
By his ninth assignment Warren urges the trial court erred in denying the motion for mistrial he lodged during this portion of the State's opening statement:
The setting of the case today is one of drugs. The victims are the people of Claiborne Parish, and the victims are the families that are torn apart by the drugs. They are the kids walking in the streets late at night and they are the drug addicts that are searching for any way they can come up with twenty dollars, beg, borrow, or steal. Those are the problems. R.p. 295.
Counsel objected on grounds that the argument appealed to the prejudice, sympathy and emotions of the jury; he also moved for a mistrial. After a sidebar conference, the court sustained the objection but denied the mistrial. The remarks made by the prosecutor in this instance did not fall within the *510 scope of Art. 770,[3] and the granting of a mistrial was therefore discretionary. Discretionary mistrial is regulated by art. 775, which states in part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
The ordering of a mistrial is a drastic remedy and except in instances in which it is mandatory, is only warranted if substantial prejudice results which deprives defendant of a fair trial. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Burdgess, 434 So.2d 1062, 1065 (La.1983). Moreover, the trial court's rulings with regard to the scope of the opening statement should not be disturbed absent a manifest abuse of discretion. State v. Deboue, 496 So.2d 394 (La. App. 4th Cir.1986).
In brief Warren urges that the prosecutor's comments exceeded the scope of opening statement, La.C.Cr.P. art. 766, by referring to facts not expected to be proved. We note, however, that the court sustained counsel's objection and the prosecutor immediately discontinued the line of argument. We find that the prosecutor's comments did not rise to the level of preventing a fair trial and warranting a mistrial. An admonition by the court would have likely cured any potential prejudice. However, defendant failed to request an admonition under art. 771 and an admonition is only available upon request. La.C.Cr.P. art 771; State v. Hattaway, 28,060 (La.App.2d Cir. 5/8/96) 674 So.2d 380, 387.
Nevertheless, the general jury charge given by the court cautioned the jurors from making decisions based upon sympathy, passion, prejudice, or public opinion and this was sufficient to cure any possible prejudice which may have resulted.
We accord credit to the good sense and fair-mindedness of the jurors who heard the evidence. State v. Prosper, 455 So.2d 673 (La.App. 4 Cir.1984). There is no showing that the prosecutor's comments made it impossible for the defendant to obtain a fair trial and the trial judge was not clearly wrong in this determination. This assignment lacks merit.

Improper Foundation
By assignments No. 10, 11 & 12, Warren argues that the trial court erred in allowing certain evidence to be introduced at trial without proper foundation. All of these assignments arise from the testimony of Jean Baker, an employee of Wade Correctional Center in the records office. Defendant merely states that the state failed to comply with requirements of La. C.E. 804 B(5). That article, however, was repealed by 1995 Acts, No. 1300, effective August 15, 1995. The defendant's trial began on September 18, 1995, thus the article would not be applicable.
We note, however, the record reveals that the State complied with La.C.E. art. 803(8) and the documents at issue were authenticated in accord with La.C.E. art. 901(B). Furthermore, any error related to the evidence at issue would be harmless; the same evidence complained of by defendant was offered without objection by the testimony of Steve Williams. Where inadmissible hearsay is improperly introduced at trial, but the testimony is merely cumulative of the other properly introduced testimony, it is harmless error. State v. Cotton, 511 So.2d 1207 (La.App. 2d Cir.1987). Finally, the defense conceded in closing argument that defendant was a convicted felon. These assignments of error are without merit.

Chain of custody
By assignments No. 13 and No. 14, Warren urges the trial court erred in allowing the State to introduce exhibits S-3 and *511 S-4 (pouch and gun) without first establishing a proper chain of custody. During trial, the defendant raised contemporaneous objections to the admission of both items. R.pp. 333, 337
To admit demonstrative evidence at trial, the law requires that the object be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation at trial. State v. Toney, 26,711 (La.App.2d Cir. 3/1/95), 651 So.2d 387; State v. Sweeney, 443 So.2d 522 (La.1983). The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered. The State need only establish by a preponderance of the evidence that the object is the one connected with the case. Id. A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. State v. Jackson, 629 So.2d 1374 (La.App. 2d Cir. 1993), writ denied, 94-0201 (La.05/06/94), 637 So.2d 1046.
During the trial, the State elicited testimony from Sergeant Donald Malray, regarding exhibits 3 and 4. Sergeant Malray testified that he was involved in the stop of the defendant and he seized the items from the defendant at the scene of the arrest. The items were initially held in Sergeant Malray's office, then transferred to the Homer Police Department evidence locker room where they remained until the Sergeant Malray brought them to the district attorney's office and the courtroom for pretrial matters. The officer was in possession of the items when they were presented at trial.
On this record, we find the State established an adequate chain of custody anent the gun and the pouch. The evidence proved by a preponderance of the evidence that the gun and pouch introduced at trial were the same items seized from the defendant at the scene of the arrest.
These assignments lack merit.

Non-relevant and non-material evidence
By assignment of error No. 15, Warren argues the court erred in admitting, over objection, the bullets from the gun which was seized from the defendant. Warren argues that the bullets had no independent relevance and were highly prejudicial and inflammatory.
Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence. La.C.E. art. 401. The trial court is vested with wide discretion in determining relevancy of evidence and its ruling will not be disturbed on appeal in absence of clear showing of abuse of discretion. State v. Miles, 402 So.2d 644 (La.1981); State v. Johnson, 27,522 (La.App.2d Cir. 12/6/95) 665 So.2d 1237.
Sergeant Malray testified that the gun was loaded at the time he retrieved it from the pouch and he removed the bullets from the gun. The bullets were then placed in the HPD property room. Sergeant Malray testified that the bullets were either in his possession or in the property room since being removed from the gun.
In State v. Barrett, 350 So.2d 664 (La. 1977), the court held a handgun and bullets seized during the execution of a search warrant were relevant where the officers had been searching items used during the commission of an armed robbery, and a witness testified that the robbery suspect was armed with a handgun.
In the case sub judice, the arresting officer testified that the gun was loaded at the time he seized it from the defendant. As such, the bullets are relevant to corroborate the officer's testimony that the gun offered in evidence was the gun seized. Such testimony and evidence provide the jury with an accurate depiction of the evidence as it was at the time of the arrest. Likewise, defendant has not shown that he was prejudiced by the trial judge's admission into evidence of the bullets. The trial court did not abuse its broad discretion in admitting the bullets. This assignment is without merit.

Special Jury Charges
By assignment of error No. 23, Warren argues the trial court erred by refusing *512 to grant a special jury charge to inform the jury that the State had misstated the law in closing argument. During the closing, the prosecutor made the following statement:
He got on the motorcycle and he was riding it around, but he didn't know the weapon was there. I'm sorry, but if you're a convicted felon, you should look a little bit harder than the average person because you know you cannot have a gun. Did he take the steps to look? If he did not, the law says he should have known and that is sufficient. R.p. 464.
At the completion of the closing statement, the defendant requested a bench conference and after an off-the-record discussion, the jury was dismissed for a recess. R.p. 465. The defendant contended the prosecutor's statement implied the defendant had a duty to inspect or to determine whether or not there was a gun on the motorcycle. The court reviewed the tape of the proceedings to determine the exact wording of the statement. The court then allowed defense counsel an opportunity to conduct research to determine "whether or not his proposed remedy of giving a special instruction that was not the law would be appropriate." R.p. 467. Defense counsel was unable to provide any statutory or jurisprudential law in support of the requested charge and the court subsequently denied the request.
Warren now urges that the State misstated the law, and the jury instruction given did not cure the misstatement. We agree that the law imposes no special duty on the defendant to inspect his surroundings to assure they are not firearm-free; however, he fails to cite any authority which would support his contention that a special jury charge was the proper remedy.
In addition, there was no request for an admonition or a mistrial. Absent such an objection, defendant can be deemed to have waived such error, and is now precluded from raising this issue on appeal. State v. Miles, 402 So.2d 644 (La.1981); State v. Spencer, 93-571 (La.App. 5th Cir. 1/25/94), 631 So.2d 1363.
Although the prosecutor's statement was improper, we are not "thoroughly convinced" that it influenced the jury or contributed to its verdict. State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, cert. denied 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995). Further, in its general charge, the court specifically instructed the jury not to consider as evidence any statements or argument made by counsel, including those made during closing arguments. This is sufficient to cure any prejudice. See State v. Baker, 28,152 (La.App.2d Cir. 5/8/96), 674 So.2d 1108, fn. 7. This assignment lacks merit.

Error patent review
By his 26th assignment Warren asks this court to review the record for errors patent, a procedure we are statutorily obligated to perform. La.C.Cr.P. art. 920(2); State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.), modified on other grounds 624 So.2d 1208 (1993). We note two errors:
(1) The trial court failed to inform Warren of the prescriptive period for post conviction relief, as required by La.C.Cr.P. art. 930.8. This defect obviously has no bearing on the sentence and is not grounds to vacate the sentence or remand the case. La.C.Cr.P. art. 921. The district court is directed to give appropriate written notice of the prescriptive period for PCR within 10 days of the rendition of this opinion and to file Warren's receipt of such notice in the record.
(2) On the charge of possession of a firearm by a convicted felon, the defendant was fined $1,000.00 plus court costs. R.p. 509.
An indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Monson, 576 So.2d 517 (La.1991). Where an appellate court can determine indigency from the record, such a penalty may be treated as error. State v. Washington, 605 So.2d 720 (La.App. 2d Cir.1992), writ denied, 610 So.2d 817 (La. 1993). However, the impoverished status must be clearly reflected. State v. Lukefahr, 363 So.2d 661 (La.1978), cert. denied, 440 *513 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).
The record shows that Warren was represented at trial and on appeal by appointed counsel. During sentencing the court acknowledged the defendant's indigent status, and ordered the default period to be served concurrently with the underlying sentence of eight years. R.p. 509. The portion of the sentence imposing incarceration in default of payment of fines will be deleted based on the defendant's indigent status.

Excessive Sentence
The defendant asserts the trial court failed to place proper emphasis on the mitigating factors in this case, and that the sentences imposed were excessive. The State contends the defendant was properly sentenced.
Before imposing the sentence, the court reviewed a pre-sentence investigation report ("PSI") which detailed defendant's criminal history. Warren's PSI reflects a 1976 conviction for simple battery, a 1986 conviction for aggravated battery, a 1987 conviction for possession of cocaine, a 1989 conviction for simple battery, a 1990 conviction for simple criminal damage to property, and a 1991 conviction for attempted possession of a firearm by a convicted felon. Defendant was found to be a fourth felony offender with pending unprosecuted charges allegedly committed while on bail awaiting trial on the instant charges. R.p. 506.
The court further noted that the defendant had previously received sentence amelioration and despite his fourth offender status, the longest sentence he had received was 18 months at hard labor. At the time of sentencing, the defendant was disabled due to a back injury, but prior to the injury he had been regularly employed for 17 years.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate when the crime and punishment, considered in light of the harm done to society, shock the sense of justice. State v. Hogan, 480 So.2d 288 (La. 1985); State v. Strange, 28,466 (La.App.2d Cir. 6/26/96), 677 So.2d 587.
The District Court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Strange, supra.
The record shows that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. We find no abuse of discretion in this matter. Defendant's criminal history and previous suspended sentences indicated that prior suspended sentences had not been effective. The defendant's history indicates the he will have the propensity to commit another crime.
The maximum penalty for possession of a firearm by a convicted felon, R.S. 14:95.1, is 10 years imprisonment without benefit and a fine of not more than $5,000.00. For this charge, Warren received eight years without benefit and a fine of $1,000.00 plus court costs with one year in default of payment of fines and costs. The default tine is, of course, erroneous.
The maximum penalty for possession of cocaine, R.S. 40:967C, is five years imprisonment with or without hard labor and a fine of $5,000.00. For this charge, the defendant was sentenced to five years at hard labor to be served concurrent with the eight year sentence. R.p. 509.
Based on this record, the sentences were proportionate to the seriousness of the offenses and do not reflect a purposeless and needless inflictions of pain and suffering. Likewise, the sentences imposed do not shock our sense of justice. This assignment lacks merit.

Conclusion
For the foregoing reasons, the convictions of Earl Warren for possession of a firearm *514 by a convicted felon and possession of cocaine are affirmed. The sentence for possession of a firearm is amended to delete the default time; the sentence is otherwise affirmed. The sentence for possession of cocaine is affirmed. The conviction and sentence for possession of a stolen motorcycle are reversed.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] In brief, the defendant states that assignments of error Nos. 1, 6, 8, 16, 18, & 19 are voluntarily abandoned or are moot. None of these assignments of error were briefed. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir. 1989), writ denied, 558 So.2d 1123 (La.1990).
[2] As we have determined the evidence was insufficient to convict defendant of illegal possession of stolen things, assignments of error No. 17, No. 20 (both regarding hearsay testimony), No. 21 (regarding condition of the motorcycle) and No. 22 (regarding related jury charges) are therefore moot.
[3] A mistrial is mandated when the judge, district attorney or a court official makes, within the hearing of the jury, a remark that refers directly or indirectly to (1) race, religion, color or national origin, if the comment is not material and might create prejudice against the defendant, (2) another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible, (3) the defendant's failure to testify in his own defense, or (4) the judge's refusal to direct a verdict. La.C.Cr.P. art. 770.