792 So.2d 117 (2001)
STATE of Louisiana
v.
Jeffrey JONES.
No. 2000-KA-1942.
Court of Appeal of Louisiana, Fourth Circuit.
July 25, 2001.
*119 Harry F. Connick, District Attorney Of Orleans Parish, Juliet Clark, Assistant District Attorney Of Orleans Parish, New Orleans, LA, Counsel for Plaintiff/Appellee.
Brian P. Brancato, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, and Judge MAX N. TOBIAS, Jr.
TOBIAS, Judge.
The defendant, Jeffrey Jones, was charged by bill of information on 4 September 1998 with possession of cocaine, a violation of La. R.S. 40:967(C). He pled not guilty at his 11 September 1998 arraignment. A preliminary hearing and a motion to suppress the evidence were held on 7 October 1998. The trial court found probable cause and denied the motion to suppress. A jury trial was held on 12 November 1998, and the defendant was found guilty of attempted possession of cocaine. On 28 December 1998, the State filed a multiple offender bill of information alleging the defendant to be a fourth felony offender. The defendant filed a motion for new trial, which was denied, and the trial court ordered a pre-sentence investigation. On 16 April 1999, the defendant filed a motion to quash the multiple bill; the trial court denied the motion to quash and found the defendant to be a third felony offender. On 16 July 1999, the trial court again denied the motion for new trial. On 23 July 1999, the defendant was sentenced to life imprisonment at hard labor. A motion to reconsider sentence *120 and motion to quash were denied. The defendant appealed and assigns four errors. In a supplemental pro se brief, the defendant assigns one error.

STATEMENT OF THE FACTS
Police Officer Chris Cambiotti of the New Orleans Eighth District Task Force, Narcotics Unit, testified that on 11 August 1998, he and his partner had just effected an arrest at Elysian Fields Avenue and Burgundy Street and were en route to Central Lockup with a prisoner when he observed the defendant standing in a doorway with an object to his mouth. The officers stopped to investigate. As they exited their vehicle, the defendant brought the object down to his side with his right hand and dropped it to the ground. Officer Cambiotti retrieved the object, a crack pipe containing wire mesh and cocaine residue, which was warm to the touch when he retrieved it. Cambiotti acknowledged that he did not recover a lighter or matches from the defendant and that he did not observe any smoke emanating from the defendant's mouth.
Officer Ryan Maher testified to the same facts, noting the arrest occurred in a high narcotics area.
Mr. Corey Hall, an expert in the testing of controlled dangerous substances, testified that he performed two teststhe crystal test and the gas chromatograph mass spectrometer teston the substance in the pipe; it proved to be positive for cocaine.
The defense called Mr. Clifton Johnson, who testified that he was arrested with the defendant. He stated that on the day in question he was exiting his apartment building when he encountered the defendant as he was passing by. Mr. Johnson testified that he had never met Mr. Jones before and that the two were walking side by side when the police stopped them and had them place their hands on the police car. Mr. Johnson stated the officers subsequently found a crack pipe in the immediate area. He denied that he or Mr. Jones had discarded the pipe. Mr. Johnson testified that he was arrested for possession of drug paraphernalia for which he was awaiting trial.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NUMBER 1
The defendant contends the evidence was insufficient to support his conviction. Specifically, he argues that the State did not meet its burden of proving beyond a reasonable doubt that he knew that there was cocaine in the pipe because no testimony was elicited at trial that the officers saw residue in the pipe.[1]
The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).
To support a conviction for possession of cocaine, the State must prove that the defendant was in possession of the illegal drug and that he knowingly or intentionally possessed it. State v. Shields, 98-2283, p. 3 (La.App. 4 Cir. 9/15/99), 743 So.2d 282, 283. State v. Lavigne, 95-0204 (La.App. 4 Cir. 5/22/96), 675 So.2d 771; *121 State v. Chambers, 563 So.2d 579 (La.App. 4 Cir.1990). To prove attempt, the State must show that the defendant committed an act tending directly toward the accomplishment of his intent to possess cocaine. Chambers, 563 So.2d at 580.
The elements of knowledge and intent need not be proven as facts, but may be inferred from the circumstances by the factfinder. State v. Porter, 98-2280, p. 3 (La.App. 4 Cir. 5/12/99), 740 So.2d 160, 162. A trace amount of cocaine in a crack pipe may be sufficient to support a conviction for possession. See, Shields, supra; Porter, supra. However, the amount of the substance seized has some bearing on the defendant's guilty knowledge. State v. Taylor, 96-1843, p. 7 (La.App. 4 Cir. 10/29/97), 701 So.2d 766, 771. Evidence of flight, concealment, and attempt to avoid apprehension is relevant when circumstantial evidence is used to establish guilty knowledge. State v. Davies, 350 So.2d 586 (La.1977).
In State v. Lavigne, supra, this Court affirmed the defendant's conviction for attempted possession of cocaine even though no visible cocaine was present stating,
Appellant was seen acting in an irate manner. The small pipe found in his pocket is the type commonly used for smoking cocaine, and it contained a residue which proved to be cocaine. Here, guilty knowledge can be inferred from the appellant's actions prior to his arrest, from his dominion and control of the pipe commonly used with drugs, and from the residue of cocaine found in the pipe. Unlike the appellant in Trahan who claimed no knowledge of the drugs found in his trailer, appellant was in possession of the pipe containing the drug, and the only reasonable interpretation is that he knew the pipe contained cocaine residue. His claim is without merit.
Id., 95-0204 at p. 13, 675 So.2d at 779.
In State v. Gaines, 96-1850 (La.App. 4 Cir. 1/29/97), 688 So.2d 679, this Court likewise affirmed the defendant's conviction for possession of cocaine stating,
In the instant case the defendant ran when he saw the officers approaching him. Although part of this could be attributable to his wanted status and his possession of the gun, the jury could have also found that this action was partially due to his possession of the pipe containing the drug residue. In addition, one officer testified without contradiction as to the purpose of the pipe. See, State v. Spates, supra. [588 So.2d 398 (La.App. 2 Cir.1991) ] At trial the appellant did not argue that the residue was so small that he could not have known it was in the pipe; instead, his defense was that one of the officers falsely told the others that he found the pipe on him while he was still sitting in the police care outside the police station. Given these factors, it appears the jury could have disbelieved the appellant's story, found beyond a reasonable doubt that he knowingly possessed the glass pipe as well as the cocaine residue inside it.
This assignment is without merit.
Id., 98-1850 at p. 7, 688 So.2d at 683.
As in Gaines, the defense, through the testimony of Mr. Johnson, was principally that the defendant did not possess the pipe in question.
In State v. Jones, 94-1261 (La.App. 3 Cir. 5/17/95), 657 So.2d 262, the Court found that the evidence was sufficient to establish guilty knowledge where the defendant ran from the police and discarded the crack pipe during his flight. The Court also noted with approval the reasoning *122 in State v. Spates, 588 So.2d 398 (La. App. 2 Cir.1991) stating: "Physical possession of an instrument with no utility other than the ingestion of crack cocaine is sufficient under the Jackson v. Virginia standard to support a conviction for possession of cocaine." Id., 94-1261 at p. 12, 657 So.2d at 270. Indeed this Court has cited both Spates and Jones with approval on numerous occasions. See, State v. Bullock, 99-2124 (La.App. 4 Cir. 6/14/00), 766 So.2d 585; State v. Tassin, 99-1692 (La.App. 4 Cir. 3/15/00), 758 So.2d 351; State v. Rice, 99-1204 (La.App. 4 Cir. 3/15/00), 758 So.2d 911; State v. Magee, 98-1325 (La.App. 4 Cir. 12/15/99), 749 So.2d 874; State v. Postell, 98-0503 (La.App. 4 Cir. 4/22/99), 735 So.2d 782; State v. Williams, 98-0806 (La. App. 4 Cir. 3/24/99), 732 So.2d 105; State v. Gaines, supra.
The defendant contends, principally on the basis of State v. Postell, supra, that because no testimony was offered that any visible residue was present, the State failed to prove the element of guilty knowledge. In Postell, this Court reversed the defendant's conviction saying, "In the case at hand, the defendant did not attempt to flee nor did he exhibit any other furtive behavior that would support a finding of guilty knowledge. .... The record reveals no evidence of corroborating factors that would lead to the conviction of the defendant based on the circumstantial evidence presented." Id., 98-0503 at pp. 7-8, 735 So.2d at 786-87.
The present case can be distinguished from Postell, as the defendant, upon seeing the officers exit the vehicle, removed the pipe from his mouth and surreptitiously dropped it to the ground. Although the defendant did not attempt to flee, this furtive behavior is consistent with guilty knowledge. Additionally, the fact that the defendant had the pipe to his mouth, was warm to the touch when retrieved, and contained wire mesh and cocaine residue, may have indicated to the jury that the defendant had the requisite intent to attempt to possess cocaine, even though no lighter or matches were recovered.
This Court also noted in Postell that the arresting officer, "an experienced and well-trained officer of the New Orleans Police force, did not and could not detect the presence of cocaine at the time of arrest. Therefore, the defendant was not charged with possession of cocaine until after the tests had been performed and a positive result was rendered." Id., 98-0503 at p. 8, 735 So.2d at 786. By contrast, in the instant matter, the defendant was arrested for possession of cocaine and Officer Cambiotti testified regarding his recovery of the crack pipe, "I picked up the object. It turned out to be a crack pipe containing wire mesh and cocaine residue. It was still warm to the touch when I retrieved it." The officer's testimony indicates that he was aware the pipe contained cocaine residue at the time he retrieved it.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant claims the trial court erred in denying his motion for a new trial based on newly discovered evidence.
La.C.Cr.P. art. 851 provides that a new trial shall be granted on motion of the defendant whenever, among other reasons:
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty; ....
In order to obtain a new trial based on newly discovered evidence, the *123 defendant must show that: (1) the new evidence was discovered after trial; (2) the failure to discover the evidence at the time of trial was not due to the defendant's lack of diligence; (3) the evidence is material to the issues at trial; and (4) the evidence is of such a nature that it would probably have changed the verdict of guilty. State v. Bright, 98-0398, (La.4/11/00), 776 So.2d 1134. In ruling on the motion, the trial court must ascertain whether new material fit for a new jury's consideration is present, not weigh the evidence as though it were a jury determining guilt or innocence. State v. Cavalier, 96-3052, p. 3 (La.10/31/97), 701 So.2d 949, 951. Nevertheless, the court must determine whether the evidence presented at trial appears strong enough to support a conclusion that the newly discovered evidence probably would not have changed the verdict, considering any newly discovered evidence that would be presented at trial. Id., 96-3052 at pp. 4-5, 701 So.2d at 952. A trial court assessing the legal merits of a motion for new trial is given considerable latitude in evaluating the reliability of the evidence and its impact on the verdict. State v. Brooks, 98-0693, p. 12 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 820, writ denied, 99-2519 (La.2/25/00), 755 So.2d 247. The trial court has much discretion in ruling on a motion for new trial. State v. Cureaux, 98-0097, p. 4 (La.App. 4 Cir. 5/26/99), 736 So.2d 318, 321. Review of the trial court's ruling is limited to determining whether the trial court abused its discretion. State v. Labran, 97-2614, p. 6 (La.App. 4 Cir. 5/26/99), 737 So.2d 903, 907, writ denied, 99-1981 (La.1/7/00), 752 So.2d 175.
The new evidence presented by the defendant at his motion for new trial were copies of two municipal affidavits reflecting that Mr. Johnson was arrested for violations of lewd conduct by urinating in public and possession of drug paraphernalia on 11 August 1998, at 12:10 a.m., at 2112 Burgundy Street. The defendant's motion states that, despite the exercise of reasonable diligence, the affidavits were not discovered prior to trial. The affidavit in support of the motion for new trial, submitted by counsel, states that he only learned of the name of the witness "shortly before the day of trial," and further that he only learned on the day of trial that Mr. Johnson was also arrested for possession of drug paraphernalia.
It is important to distinguish between new evidence and evidence that simply had not been collected prior to trial. While defense counsel may not have had sufficient lead-time to procure the municipal affidavits charging Mr. Johnson prior to trial, counsel knew or should have known that if Mr. Johnson had been arrested there would be a public record to confirm or refute the fact. It is difficult to classify public records of the type here as newly discovered evidence. Aware that Mr. Johnson would testify that he and the defendant were arrested together, counsel should have moved for a continuance based on the necessity of obtaining the corresponding arrest records. The defendant has failed to show that the municipal affidavits were any more available or capable of being located after the trial, than they were before trial. State v. Ventry, 99-0302 (La.App. 4 Cir. 6/14/00), 765 So.2d 1129, 1133. Accordingly, the defendant has failed to demonstrate that the evidence was not obtainable despite reasonable diligence.
Furthermore, assuming the municipal affidavits were unavailable for purposes of La.C.Cr.P. art. 851, they do not constitute evidence which if introduced at trial would probably have changed the verdict. The motion and affidavit for new trial contend that the municipal affidavits *124 are exculpatory in nature as they refute the testimony of the two officers that Mr. Johnson was not arrested for possession of cocaine or drug paraphernalia. However, the record reflects that Officer Maher testified that he could not remember what the other individual was arrested for, and that Officer Cambiotti was never asked the question. Although the affidavits corroborate Mr. Johnson's testimony regarding his being arrested with the defendant, as the face sheet of Mr. Jones' arrest report reflects, he too was arrested at 12:10 a.m., and was charged with possession of drug paraphernalia. These facts do not provide a basis for the granting of a new trial because the evidence is merely cumulative. State v. Cavalier, 96-3052, p. 3 (La.10/31/97), 701 So.2d 949, 951.
It should be noted that the Mr. Johnson's assertion that he and the defendant were arrested for possession of the same crack pipe was not directly affected by the affidavits. However, this allegation could be confirmed or allayed by information, such as a receipt from central evidence and property, concerning the evidence submitted in connection with Mr. Johnson's arrest, information that has not been submitted here or in the trial court.
The defendant fails to show that the trial court abused its discretion in denying the motion for new trial in either respect. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In the third assignment of error, the defendant claims that the trial court erred in adjudicating him a third felony habitual offender, as the State failed to prove that the predicate guilty pleas were knowingly and voluntarily entered. Defense counsel filed a motion to quash the multiple offender bill of information alleging that the State failed to prove the defendant had been properly Boykinized and the trial court noted counsel's objection to his ruling on the hearing; therefore, these issues have been preserved for review. cf. State v. Boles, 99-0427, p. 7 (La.App. 4 Cir. 5/10/00), 763 So.2d 74, 79 (a defendant's failure to object at the habitual offender hearing to the absence of Boykin transcripts precludes review of that issue therefore, the converse is true).
In State v. Alexander, 98-1377 (La.App. 4 Cir. 2/16/00), 753 So.2d 933, this Court stated:
LSA-R.S. 15:529.1 D(1)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), the Supreme Court stated:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than the "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh *125 the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (footnotes omitted).
98-1377 at pp. 5-6, 753 So.2d at 937.
The State's exhibits introduced at the habitual offender hearing are missing from the record. The transcript of the habitual offender proceeding reflects that all the prior convictions were pursuant to guilty pleas. However, neither the record nor the transcript reflects that the defendant was represented by counsel at those prior guilty pleas. Thus, the State has failed to meet its initial burden of proving that the defendant was represented by counsel. Other than the trial court judge's statement that he reviewed the plea of guilty forms and found sufficient compliance with the minimal requirements of Boykin, no objective proof is present that the defendant was fully Boykinized prior to entering the guilty pleas. Indeed there is no objective proof that the defendant was even convicted of the crimes alleged.
We find the assignment of error to be of merit. Accordingly, defendant's adjudication and sentence as a habitual offender must be reversed, and the case remanded for resentencing.

ASSIGNMENT OF ERROR NO. 4
In his fourth assignment of error, the defendant argues that his life sentence is unconstitutionally excessive. However, since we have remanded the matter for resentencing, this assignment is presently moot.

PRO SE ASSIGNMENT OF ERROR NO. 1
In a pro se supplemental brief, the defendant contends that the physical evidence introduced was illegally and unlawfully used against him as the product of an unlawful search.
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exception to warrant requirements. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999).
La.C.Cr.P. art. 215(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
The testimony in the record establishes that the trained eyes of the police officer observed the defendant standing in a doorway with an object to his mouth. As the officers exited their vehicle, the defendant brought the object down to his side in his right hand and dropped it to the ground. Upon its retrieval from the ground, the officer determined that the object was a still warm crack pipe.
Reasonable suspicion is something less than probable cause required for an arrest. The reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Littles, 98-2517, p. 3 (La. App. 4 Cir. 9/15/99), 742 So.2d 735, 737; State v. Clay, 97-2858, p. 4 (La.App. 4 Cir. 3/17/99), 731 So.2d 414, 416, writ denied, 99-0969 (La.9/17/99), 747 So.2d 1096. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p. 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770.
*126 In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. See State v. Harris, 99-1434, pp. 2-3 (La.App. 4 Cir. 9/8/99), 744 So.2d 160, 162. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299; State v. Keller, 98-0502, p. 2 (La.App. 4 Cir. 3/10/99), 732 So.2d 77, 78. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231; State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160.
From the totality of the facts, we find the officers had reasonable suspicion that a crime was being committed. The officers properly seized the crack pipe from the ground for they constantly watched all of the defendant's actions. Their actions were not unlawful and the crack pipe was properly introduced into evidence.
This assignment is without merit.

CONCLUSION
For the foregoing reasons, the conviction is affirmed, the sentence vacated, and the matter remanded for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.
NOTES
[1] We specifically note that Officer Cambiotti testified that he observed cocaine residue in the crack pipe.